IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

FRANCES HILL                                    :
          Plaintiff,

          v.                                    :          CIVIL ACTION
                                                           NO. 11-22
BOROUGH OF POTTSTOWN                            :
          Defendant.                            :


**MEMORANDUM**

**Jones, II  J.**                                      **September 28, 2012**

## I.    INTRODUCTION

Plaintiff Frances Hill  brings the above-captioned action against her former employer,

Defendant Borough of Pottstown, for various alleged acts of racial and gender discrimination.

Defendant has moved to dismiss on the bases of failure to state a claim and timeliness.  For the

reasons discussed hereinbelow, said Motion shall be granted.

## II.   BACKGROUND

Plaintiff is an African-American female who began her employment with Defendant as a

full time custodian in 1996. (Pl. Am. Compl. ¶¶ 8-9). The only African American female in her

department, Plaintiff maintained a satisfactory job performance during her employment. (*Id*. at ¶

10). Plaintiff alleges that on December 8, 2008, she applied and interviewed for the position of

Property Maintenance Worker. (*Id*. at ¶ 13). Plaintiff further alleges that although she was

qualified for the position, it was given to a Caucasian male named "Dave," from a different

department, who was less qualified and had less seniority than Hill. *(Id*. at ¶¶ 13-14.) In response

1

to being denied the position, Plaintiff attempted to exercise her "bumping" rights over Dave (a privilege sometimes awarded to employees with seniority), but was denied the opportunity to do so.  (*Id*. at ¶ 15). On December 31, 2008, Plaintiff was informed by her manager, Raymond Lopez, that she was being laid off because Defendant was hiring a private contractor to do the work that Plaintiff had been hired to do. *(Id*. at ¶ 12).

On June 18, 2009, Plaintiff dual-filed her Complaint of race and gender discrimination with the Pennsylvania Human Relations Commission ("PHRC") and the Equal Employment Opportunity Commission (" EEOC").  (*Id*. at ¶ 16; Def.'s Mot. to Dismiss, Ex. A).  On September 18, 2009, Plaintiff submitted a request to Defendant's  Human Resources Coordinator, Sandi Chieffo, to exercise her right to "bump" less senior employees in the Machine Operator position at Defendant's Water Plant. (Pl. Am. Compl. ¶ 17). Plaintiff's request was again denied, despite her contention that she was qualified for the position and less senior Caucasian male employees were able to exercise their bumping rights to return to work. (*Id*. at ¶ 19).  Plaintiff alleges that while Defendant has returned less senior male and Caucasian employees to work since September 18, 2009, she has not been contacted regarding her date to return to work.  (*Id*. at ¶ 18).

On November 19, 2009, Plaintiff dual-filed a second charge against Defendant with the PHRC and EEOC, alleging gender discrimination for Defendant's failure to allow her to exercise her "bumping rights" on Sept. 18, 2009. (Pl. Resp. & Opp'n to Def.'s Mot. to Dismiss ¶ 20); (Def. Ex. A).

### III.    STANDARD OF REVIEW

As a preliminary matter, Plaintiff argues that since Defendant's Motion relies upon extraneous factual allegations and material outside of the allegations contained within the Amended Complaint, the court should either disregard these extraneous factual allegations, or regard Defendant's Motion as one for summary judgment. (Pl.'s Resp. Opp'n to Def.'s Mot. to Dismiss, 6).  However, this Court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Foust v. FMC Corp.*, 962 F. Supp. 650, 651 (E.D. Pa. 1997) (quoting *Pension Ben. Guar. Corp. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  In that same vein, "where [a] plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint, the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Rajis v. Brown*, 1997 U.S. Dist. LEXIS 12319, at *10-11 (E.D. Pa. Aug. 13, 1997) (citing *Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).  Upon assessment of the content and nature of the filings in this particular case, Defendant's Motion shall be treated as one for dismissal and not summary judgment.[1]

In deciding a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under reasonable reading of the complaint, the plaintiff may be entitled to

---

[1]  To the extent Plaintiff might take issue with Defendant's inclusion of documents previously docketed of record in this case, they are a matter of public record and Plaintiff has clearly been on notice of same.  The correspondence pertaining to service of Plaintiff's Complaints cannot come as any surprise to her, either.  In any event, all issues pertaining to the timing of Plaintiff's Amended Complaint have previously been resolved by this Court and are moot for purposes of the instant Motion, thereby rendering Plaintiff's objections to these particular documents a non-issue.

relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). After the Supreme

Court's decision in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007), "threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable of the alleged misconduct." *Id*. (citing *Twombly*, 550 U.S. at 556). This

standard, which applies to all civil cases, "asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id.*; *accord Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-211 (3d Cir.

2009) ("All civil complaints must contain more than an unadorned the- defendant - unlawfully -

harmed-me accusation."). Moreover, "[t]he factual detail in a complaint [must not be] so

undeveloped that it does not provide a defendant with the type of notice of claim which is

contemplated by Rule 8 [of the Federal Rules of Civil Procedure]." *Villegas v. Weinstein &

Riley, P.S.*, 723 F. Supp. 2d 755, 756 (M.D. Pa. 2010) (quoting *Phillips*, 515 F.3d at 232).[2]

IV.     DISCUSSION

      a.     **Counts I and IV**

Reaching the merits of the instant motion, this Court first addresses Defendant's request

to dismiss portions of Counts I and IV of Plaintiff's Amended Complaint, which allege racial and

gender discrimination in violation of Title VII, 42 U.S.C. §2000e-1, *et seq*. and the Pennsylvania

Human Relations Act, 43 Pa.C.S.A. § 951 *et seq.* ("PHRA"), respectively. Specifically,

Defendant argues that the Title VII claims related to the December 31, 2008 lay-off incident must

---

[2] This Court notes that Plaintiff's brief is devoid of any reference to the current standard
for deciding a Motion to Dismiss but instead, relies upon a more lenient pre-*Iqbal* standard.

be dismissed because Plaintiff failed to sue the proper defendant within ninety days of receiving

her Right to Sue Letter. (Mem. Supp. Def's. Mot. to Dismiss 10).  However, this argument is

rendered moot by this Court's Order dated July 6, 2011, which allowed Plaintiff's April 25, 2011

Amended Complaint (correcting the caption), to relate back to her January 3, 2011 Complaint.

(Doc. No. 14).  Accordingly, the Title VII claims related to December 31, 2008 are not time-

barred on this basis.

Defendant further argues that any claims for race discrimination relative to Defendant's

failure to hire Plaintiff for the position of Machine Operator #2 at Defendant's water plant in

September of 2009, must be dismissed under Title VII and the PHRA for failure to file a timely

action with the PHRC or EEOC, and failure to exhaust administrative remedies. (*Id*. at 6-7).  In

particular, Defendant contends that because Plaintiff has not demonstrated that she ever received

a Right to Sue letter from the EEOC regarding the racial discrimination claims alleged in her

November 19, 2009 PHRC Complaint, she is barred from raising same here.

The process at issue herein has been explained as follows:

> The preliminary step of the filing of the EEOC charge and the receipt of the right
> to sue notification are "essential parts of the statutory plan, designed to correct
> discrimination through administrative conciliation and persuasion if possible,
> rather than by formal court action."  Because the aim of the statutory scheme is to
> resolve disputes by informal conciliation, prior to litigation, suits in the district
> court are limited to matters of which the EEOC has had notice and a chance, if
> appropriate, to settle.

*Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999) (quoting *Ostapowicz v. Johnson*

*Bronze Co.*, 541 F.2d 394, 398 (3d Cir. 1976)).  *See also Antol v. Perry*, 82 F.3d 1291, 1296 (3d

Cir. 1996) ("The purpose of requiring exhaustion is to afford the EEOC the opportunity to settle

disputes through conference, conciliation, and persuasion, avoiding unnecessary action in

5

court.").  To that end, "[n]onexhaustion constitutes a possible ground for dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  *Phillips v. Sheraton Soc'y Hill*, 163 F. App'x 93, 94 (3d Cir. 2005).

In this case, although Defendant makes an argument that no Right to Sue Letter was ever provided regarding the allegations contained within Plaintiff's November 19, 2009 Administrative Complaint, they were clearly on notice of the administrative proceedings, as they attach a copy of the Right to Sue Letter as "Exhibit D" to their Brief, as well as a copy of a letter dated August 9, 2010, informing counsel that the PHRC was dismissing Plaintiff's second Administrative Complaint ("Exhibit G").[3]  However, this Court's assessment of this issue does not end here.

"In order to comply with the spirit of the [Equal Employment Opportunity Act], there must be some limitation on suits in the district court so that the Commission will have the first opportunity to examine the allegations of discrimination."  *Ostapowicz*, 541 F.2d at 398-399.  To that end, "[c]ourts have generally determined that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission."  *Id.* at 399 (citations omitted).  Therefore, if a new allegation contained in a judicial complaint for discrimination "would have fallen squarely within the scope of a proper EEOC investigation ensuing from the original administrative claim[,]" said claim may be rendered administratively exhausted.  *Duffy v. Massinari,* 202 F.R.D. 437, 440-441

---

[3] Said letter having been the basis for the EEOC's issuance of Plaintiff's second Right to Sue Letter on April 20, 2011.

6

(E.D. Pa. 2001).  Likewise, although a plaintiff is generally required to exhaust administrative

remedies with respect to each of his or her Title VII claims, s/he "is not required to exhaust

administrative remedies with respect to a claim concerning an incident which falls within the

scope of a prior EEOC complaint or the investigation which arose out of it, provided that the

victim can still bring suit on the earlier complaint."  *Waiters v. Parsons*, 729 F.2d 233, 235 (3d

Cir.1984).  "The legal analysis for whether a judicial complaint is within the scope of an earlier

administrative charge or a reasonable investigation therefrom turns on 'whether there is a close

nexus between the facts supporting each claim or whether additional charges made in the judicial

complaint may fairly be considered explanations of the original charge or growing out of it.

*Fleming v. Kramont Employer Royce Realty, Inc.*, Civ. No. 02-2703, 2002 U.S. Dist. LEXIS

15806, at*6 (quoting *Ivory v. Radio One, Inc.*, Civ. No. 01-5708, 2002 U.S. Dist. LEXIS 5672, at

*4 (E.D. Pa. 2002)). Therefore, discriminatory actions that occur after a plaintiff has filed an

EEOC charge are generally deemed to be fairly within the scope of the original charge because

the investigation would reasonably reveal information about these actions. *Traxler v. Mifflin

County Sch. Dist.*, Civ. No. 07-1275, 2008 U.S. Dist. LEXIS 21403, at *10-11 (M.D. Pa. 2008).

   In *Fleming*, issues very similar to those presented herein were addressed by another judge

in this District. There, Plaintiff, an African American female, was employed as a receptionist and

later as an administrative assistant, during which time she allegedly endured harassment,

criticism, and was overlooked for a promotion.  *Id.* at *3. After her discharge, Plaintiff filed a

complaint with the EEOC, wherein she alleged she was discriminated against on the basis of her

race. *Id*. at *3-4. Subsequently, Plaintiff  filed a judicial complaint alleging racial discrimination,

gender discrimination, intentional infliction of emotional distress and retaliation. *Id.* at *4, 9-10.

The court granted the defendant's Motion to Dismiss on the gender discrimination and retaliation claims, stating "Plaintiff's . . . claim [was] not fairly within the scope of the EEOC charge" because there were no factual allegations in the administrative complaint of sex discrimination or retaliation, and the EEOC charge did not contain any allegations that the plaintiff had complained about the discrimination.  *Id*. at *8-10.

   The facts in *Fleming* are fairly similar to those currently before this Court, in that Plaintiff Hill alleges additional racial discrimination claims related to the failure to re-hire claim relative to the Sept. 18, 2009 incident, that were not presented in her second charge to the EEOC.  (Mem. Supp. Def's. Mot. to Dismiss, Exs. A, C).  However, *Fleming* is distinguishable from this case based on the fact that Plaintiff herein initially dual-filed an administrative complaint with the PHRC and EEOC on June 18, 2009, alleging both racial and gender discrimination related to the failure to hire claim on December 8, 2008 and her subsequent lay-off on December 31, 2008. Accordingly, Defendant was put on notice that it may have to defend race-based discrimination claims. Additionally, the initial Administrative Complaint filed by Plaintiff on June 18, 2009 (which contained allegations of racial discrimination) was still being investigated by the PHRC when the September 18, 2009 incident occurred.  Given this fact, as well as the fact that both Complaints allege the same type of behavior (not allowing Plaintiff to use her "bumping rights"), this Court *conditionally* finds that the racial discrimination claims brought pursuant to Title VII were within the scope of Plaintiff's June 18, 2009 Complaint and that a reasonable administrative investigation would have encompassed said claims. *See e.g.*, *Rajis v. Brown*, Civ. No. 96-6889, 1997 U.S. Dist. LEXIS 12319, at *15 (E.D. Pa. 1997) ("Claims not included in an EEOC charge but permitted by the district court typically either arise during pendency of the EEOC

investigation or are closely related to conduct alleged in the charge.").  However, inasmuch as

Plaintiff fails to allege in either her November 19, 2009 Administrative Complaint, or in the

Complaint presently before this Court, that there were no African American males employed at

the Water Plant Department, this portion of her Complaint shall be dismissed without prejudice.

Accordingly, Defendant's Motion to Dismiss Count 1 as it pertains to claims of racial

discrimination stemming from the incident set forth in Plaintiff's November 19, 2009

Administrative Complaint, shall be granted and Plaintiff is hereby permitted leave to amend said

claims in accordance with the mandates of *Iqbal*.[4]

> With regard to Count IV, it does not appear as though Plaintiff has exhausted her

administrative remedies under the PHRA, for purposes of bringing a racial discrimination claim

on the bases of alleged conduct related to her November 19, 2009 Administrative Complaint.[5]

This is so because "[u]nder the PHRA - unlike Title VII or the ADA - every separate charge must

be exhausted, regardless of whether a subsequent charge is fairly within the scope of a previous

one." *Traxler*, 2008 U.S. Dist. LEXIS 21403, at *11 (citing  *Snyder v. Pa. Ass'n of School

Retirees*, 566 A.2d 1235, 1241-42 (Pa. Super. 1989)).  Moreover, Plaintiff's claims relating to the

December 8, 2008 incident similarly appear to be outside the 180-day deadline set forth in  43

PA. STAT. ANN. § 959(h).  *See also Woodson v. Scott Paper Co.,* 109 F.3d 913, 925 (3d Cir.

Pa. 1996) ("If a plaintiff fails to file a timely complaint with the PHRC, then he or she is

---

[4]  Plaintiff has not sought leave to further amend as an alternative to dismissal with prejudice.  However, inasmuch as this Court cannot conclude at this time that any attempt at amendment of this particular portion of Count I would be futile, Plaintiff is hereby granted leave to do so.

[5]  Defendant does not contest the timeliness of Plaintiff's gender discrimination claims that relate to her September 18, 2009 application for employment.

precluded from judicial remedies under the PHRA. The Pennsylvania courts have strictly interpreted this requirement, and have repeatedly held that 'persons with claims that are cognizable under the Human Relations Act must avail themselves of the administrative process of the Commission or be barred from the judicial remedies authorized in Section 12(c) of the Act.'") (citation omitted). Accordingly, those allegations relating to racial discrimination as contained in Count IV of Plaintiff's Amended Complaint, shall be dismissed with prejudice.

### B.    Counts II and III

Defendant next seeks dismissal of Counts II and III of Plaintiff's Amended Complaint, which assert claims for racial discrimination and retaliation, in violation of 42 U.S.C. § 1981. Defendant argues that all Section 1981 claims must be dismissed because there is no private right of action against state entities under said Section and, even if such a private right of action existed, Plaintiff has failed to allege facts to support same. (Def.'s Mot. to Dismiss, 7).  Plaintiff responds to this argument by asserting that the 1991 amendments to Section 1981 added new language to make it clear that, "The rights protected by the section are protected against impairment by non-governmental discrimination and impairment under color of State law." (Pl. Resp. & Opp'n to Def.'s Mot. to Dismiss, 13). Furthermore, Plaintiff argues that she included a Section 1983 claim in Count V to act as "the vehicle by which she could assert her § 1981 claims." (*Id*. at 3).[6]

In order to establish a discrimination claim under Section 1981, "a plaintiff must show '(1) that he belongs to a racial minority; (2) an intent to discriminate on the basis of race by the

---

[6] This Court notes that Counts II and III of Plaintiff's Amended Complaint are devoid of any specific reference(s) to the rights provided for in Section 1981.

10

defendant; and (3) discrimination concerning one or more of the activities enumerated in

§ 1981.'"  *Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788,

797-798 (3d Cir. 2010) (quoting *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 569 (3d

Cir. 2002)).  However, "[Section] 1981, while providing extensive rights, ***does not itself provide a***

***remedy against state actors***."  *McGovern v. City of Phila.*, 554 F.3d 114, 116 (3d Cir. 2009)

(citing *Jett v. Dallas Independent School District*, 491 U.S. 701, 731 (1989)) (emphasis added).

"Because Congress neither explicitly created a remedy against state actors under § 1981(c), nor

expressed its intent to overrule *Jett*,[7] the express cause of action for damages created by § 1983[8]

constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state

governmental units." *Ford v. SEPTA,* Civ. No. 08-2018, 2009 U.S. Dist. LEXIS 48368, at *5

(E.D. Pa. June 8, 2009) (citing *McGovern*, 554 F.3d at 120-21), *aff'd* 374 F. App'x 325 (3d Cir.

2010).  *See also Lande v. City of Bethlehem,* 457 F. App'x 188, 193 (3d Cir. 2012) (*"*[A] private

cause of action cannot be asserted against a municipal employer for a violation of § 1981."*);

*Eldridge v. Municipality of Norristown*, 828 F. Supp. 2d 746, 763 (E.D. Pa. 2011) (granting

summary judgment on Plaintiff's claims brought under Section 1981"because no private right of

_____

[7]In *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701 (1989), the Supreme Court held that §1983 provides the exclusive federal remedy for violation of §1981 by state actors.

[8] Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

action lies against a state actor under § 1981.").

In her Opposition Brief, Plaintiff offers essentially no clarification regarding the purported manner in which her Section 1981 claims have been asserted within her Section 1983 claim (Count V). In any event, for the reasons set forth below, the issue is rendered moot and Defendant's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint shall be granted.

### C.      Count V

Next, Defendant seeks dismissal of Count V of Plaintiff's Amended Complaint, in which she alleges that after she exercised her First Amendment right by opposing and complaining about acts of racial and gender discrimination, Defendant subjected her to retaliation (including but not limited to, the Sept. 18, 2009 denial of the Machine Operator # 2 position), in violation of 42 U.S.C. § 1983. Additionally, Plaintiff alleges that she was denied equal protection, also in violation of Section 1983. Defendant now argues that all of Plaintiff's Section 1983 claims which arose prior to April 25, 2009 (2 years prior to the filing of Plaintiff's Amended Complaint), are time-barred. (Def. Mot. to Dismiss, 8).[9] In particular, Defendant contends that all allegations of racial and gender discrimination asserted in the December 31, 2008 Administrative Complaint should be dismissed on the basis of timeliness.

Because Section 1983 does not contain its own statute of limitations, courts look to the

---

[9] Inasmuch as this issue was already addressed by the court in resolving Plaintiff's Motion to Correct the Defendant's Caption on the Docket, this is a moot point. This Court declared that under both Rule 15(a) and the misnomer rule, Plaintiff was able to correct Defendant's caption on the docket and under 15 (c) Plaintiff satisfied all the requirements and therefore the Amended Complaint was able to relate back to the Original Complaint filed January 3, 2011. Therefore, Plaintiff is correct in stating that the statute of limitations should be calculated from January 3, 2009.

forum state's statute of limitations for personal injury torts.  *Carlton v. City of Phila.*, Civ. No. 03-1620, 2004 U.S. Dist. LEXIS 5569, at \*16 (E.D. Pa. 2004).  In Pennsylvania, the statute of limitations for such claims is two years. 42 Pa. Cons. Stat. Ann. § 5524 (2006).  *See also DiBartolo v. City of Phila.*, Civ. No. 99-1734, 2000 U.S. Dist. LEXIS 1776, at \*13-14 (E.D. Pa. Feb. 15, 2000) (holding that Section 1983 claims are analogous to tort claims and are therefore subject to Pennsylvania's two-year statute of limitations).

Plaintiff maintains that under Federal Rule 15(c), the Amended Complaint she filed on April 25, 2011 relates back to the original Complaint she filed on January 3, 2011.  *Plaintiff also concedes that only those claims for discriminatory and retaliatory actions that occurred after January 3, 2009 are actionable under Section 1983*. (Pl.'s Resp. & Opp'n to Def. Mot. to Dismiss, 14).  Therefore, despite the fact that the April 25, 2011 Amended Complaint successfully relates back to the Complaint originally filed on January 3, 2011 (thereby resetting the statute of limitations clock to January 3, 2009), Plaintiff's claims relative to her charges of racial and gender discrimination surrounding her December 31, 2008 lay-off and her inability to exercise "bumping rights" on December 8, 2008, are still outside of the applicable statue of limitations.

In view of the foregoing, the only claims that remain under Section 1983, are equal protection and First Amendment retaliation claims relative to Defendant's failure to hire Plaintiff on September 18, 2009.  Section 1983 includes a provision expressly creating a remedy against state actors who violate the statute's protections.  *McGovern*, Civ. No. 07-3817, 2008 U.S. Dist. LEXIS 6960, at \*4.  *See also Fortes*, Civ. No. 06-878, 2006 U.S. Dist. LEXIS 77039, at \*22 ("While not a source of substantive rights, § 1983 provides a remedy for violations of constitutional rights by state officials.") (citing *Sameric v. City of Phila.*, 142 F.3d 582, 590 (3d

13

Cir. 1998)). To prevail on a Section 1983 claim, a plaintiff generally must show: (1) that the defendant acted under color of state law; and (2) that the defendant deprived the plaintiff of a right protected by federal law. *Fortes* at \*22.

Within the Section 1983 framework, an equal protection analysis asks whether the plaintiff is a member of a protected class, and has been treated differently from persons who are similarly situated. *Zezulewicz v. Port Auth.*, 290 F. Supp. 2d 583, 596 (W.D. Pa. 2003) (citing *Williams v. Morton*, 343 F.3d 212, 221 (3d Cir. 2003)).  "Persons are similarly situated under the Equal Protection Clause when they are alike 'in all relevant aspects.'"  *Startzell v. City of Philadelphia*, 533 F.3d 183, 203 (3d Cir. 2008) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)).  In this case, although Plaintiff has sufficiently pleaded that she is a member of a protected class who was treated differently from male and Caucasian employees, she has failed to sufficiently plead that said employees were similarly situated.

In order to state a claim for retaliation, a plaintiff must allege that: (1) he or she engaged in protected conduct; (2) he or she was subjected to adverse actions by a state actor; and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the alleged adverse action."  *Warner v. Motgomery Twp.*, Civ. No. 01-3309, 2002 U.S. Dist. LEXIS 13257, at \* 58-59 (E.D. Pa. 2002) (quoting *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990)).  Plaintiff has alleged that she was subjected to adverse and retaliatory actions by Defendant, including the September 18, 2009 denial of the Machine Operator #2 position. Furthermore, Plaintiff has alleged that these retaliatory actions were based on her exercising her First Amendment rights when she opposed Defendant's allegedly unlawful conduct, and complained about being subjected to discrimination on the bases of race and gender. Plaintiff also

14

alleges that her complaints about Defendant's discriminatory actions were a substantial factor in Defendant's decision to not return her to work.   On the face of the Amended Complaint, Plaintiff has sufficiently alleged a retaliation claim under Section 1983.  However, said claim necessarily fails for another reason.

In order to recover from a municipality[10] under §1983, "a plaintiff must: (1) identify a policy or custom that deprived him or her of a federally protected right, (2) demonstrate that the municipality, by its deliberate conduct, acted as the "moving force" behind the alleged deprivation, and (3) establish a direct causal link between the policy or custom and the plaintiff's injury." *Fortes*, 2006 U.S. Dist. LEXIS 77039, at * 23-24 (citing *Bd. of the Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997)).  *See also Leatherman v. Tarrant Cnty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 166 (1993) (reiterating that a municipality cannot be held liable under Section 1983 "unless a municipal policy or custom caused the constitutional injury."); *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) (holding that a local government may not be sued under Section 1983 for an injury inflicted solely by its employees or agents; the claim requires that a municipal employee or official must have been acting pursuant to a municipal policy or custom when the injury was inflicted).

A municipal policy is made "when a 'decision maker possessing final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Huggins v. Coatesville Area Sch. Dist.*, Civ. No. 07-4917, 2008 U.S. Dist. LEXIS 65604, at *26-28 (E.D. Pa. 2008) (quoting *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 275 (3d Cir. 2000)).

---

[10]  Again, Plaintiff concedes that Defendant is a municipality in the Commonwealth of Pennsylvania. (Pl. Am. Compl. ¶ 7).

"Customs" have been defined as "practices of state officials . . . so permanent and well settled as to virtually constitute law." *Id*. (quoting *Berg*, 219 F.3d at 275-76). A single incident of a constitutional violation will not impose liability on a municipality unless "proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy." *Fortes*, 2006 U.S. Dist. LEXIS 77039, at *26 (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823-24(1985)).

In the matter before this Court, Plaintiff has named her former employer - a municipality in the Commonwealth of Pennsylvania - as the sole defendant.  However, Plaintiff's Amended Complaint is devoid of any allegation that said Defendant deprived her of any protected right pursuant to a municipal policy or custom. Relative to the September 18, 2009 failure to hire incident, Plaintiff only alleged that she submitted a request to Defendant's Human Resources coordinator "to exercise her right to 'bump' less senior employees," and that said request was denied by Defendant. (Pl. Am. Compl. ¶ 17).  This allegation does not even remotely demonstrate a municipal policy or custom that affected any constitutionally protected right, therefore municipal liability cannot attach to Plaintiff's Section 1983 claims.[11]  Accordingly, said claims shall be dismissed with prejudice.

### V.    Conclusion

For the reasons set forth hereinabove, Defendant's Motion to Dismiss that portion of Count 1 which pertains to claims of racial discrimination stemming from the incident set forth in Plaintiff's November 19, 2009 Administrative Complaint, shall be granted and Plaintiff is hereby

---

[11]  Plaintiff was not employed by Defendant at the time she sought to exercise "bumping" rights.  (Pl. Am. Compl. ¶ 12).

16

permitted leave to amend said claims.  Defendant's Motion to Dismiss those allegations relating to racial discrimination as contained in Count IV of Plaintiff's Amended Complaint, shall be granted and said allegations shall be dismissed with prejudice.  The gender discrimination claims contained within Count IV of Plaintiff's Amended Complaint shall remain.  Defendant's Motion to Dismiss Counts II and III of Plaintiff's Amended Complaint is granted and said claims shall be dismissed with prejudice.  Lastly, Defendant's Motion to Dismiss Count V of Plaintiff's Amended Complaint shall be granted and said claim shall be dismissed with prejudice.

An appropriate Order follows.

BY THE COURT:

/s/  C. Darnell Jones, II      J.